UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IRON WORKERS LOCAL UNION NO. 405 ANNUITY FUND, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DOLLAR GENERAL CORPORATION and TODD VASOS,<br><br>Defendants. | No.<br><br>CLASS ACTION COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

## INTRODUCTION

Plaintiff, Iron Workers Local Union No. 405 Annuity Fund ("Plaintiff"), individually and on behalf of all others similarly situated, by and through Plaintiff's counsel, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, an investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the filings of Dollar General Corporation ("Dollar General" or the "Company") with the United States Securities and Exchange Commission ("SEC"), Company news releases and conference calls, public statements issued by Defendants, securities analyst reports, and media and industry reports. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after Plaintiff has had a reasonable opportunity to conduct discovery.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a federal securities class action on behalf of all persons who purchased Dollar General securities between March 10, 2016, and November 30, 2016, inclusive (the

"Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act"). These claims are asserted against Dollar General and its current Chief Executive Officer ("CEO"), who made materially false and misleading statements and failed to disclose material facts during the Class Period in press releases, analyst and investor conference calls, and SEC filings.

2. Dollar General, a Tennessee corporation headquartered in Goodlettsville, Tennessee, is one of the largest discount retailers in the United States by number of stores, with 12,575 stores located in 43 states as of February 26, 2016. According to the Company's SEC filings, Dollar General's largest merchandise category is consumables, which includes packaged foods, perishables, and snacks. Consumables have represented over 75% of the Company's net sales for the past three years.

3. As a discount retailer, Dollar General's core customers are low- and fixed-income households, a significant percentage of which qualify for the federal food stamp benefits program (formally known as the Supplemental Nutrition Assistance Program or "SNAP"). Beginning in 1996, SNAP benefits were limited to no more than 3 months out of any 26 month period for unemployed individuals who are not disabled or raising minor children. Many states waived this limitation in the aftermath of the 2008 financial crisis. Given the improving condition of the U.S. economy, at least 20 states were planning to re-implement the limitation in 2016, which would go into effect in April at the beginning of the second fiscal quarter of 2016.

4. Throughout the Class Period, Defendants made false and misleading statements and failed to disclose material adverse facts about the Company's exposure to changes in SNAP benefits. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that the announced limitations on SNAP benefits would have a material impact on the

Company's financial performance because 56 percent of Dollar General Stores are located in states that re-implemented time limitations on SNAP benefits in 2016, and therefore the impact of SNAP reductions would be disproportionate to the percentage of the Company's overall sales comprised of SNAP payments. These statements were material to investors because they were made in response to concerns by analysts that SNAP benefits were going to be reduced in a number of states – which potentially would have impacted Dollar General's sales to the extent its business operations were exposed to SNAP changes.

5.    The truth about the impact that SNAP reductions were having on Dollar General's business began to surface on August 25, 2016, when the Company announced its second quarter 2016 ("2Q2016") results, which fell short of market expectations. The Company attributed the disappointing results in part to "a reduction in both SNAP participation rates and benefit levels."

6.    On this news, Dollar General's stock price declined $16.18 per share, or more than 17%, from a close of $91.79 per share on August 24, 2016, to close at $75.61 on August 25, 2016.

7.    Although Dollar General attributed part of its poor 2Q2016 performance to reductions in SNAP benefits, the Company failed to disclose to investors the full impact that SNAP reductions were having on the Company.

8.    The full truth was revealed on December 1, 2016, when the Company announced its third quarter 2016 ("3Q2016") results (before markets opened), which fell far short of market expectations, including a *reduction* in same-store sales, even though the Company had previously predicted annual same-store sales *growth* of 2-4%, and most analysts expected a quarterly increase in same-store sales of nearly 1%. The Company again attributed its poor quarterly performance in large part to reductions in SNAP benefits, and finally admitted the true

3

impact that SNAP reductions were having on its sales, stating that the benefit reductions "affect[] about 56% of our store base . . . And those states that have had the reduction or elimination, they are approximately 100-basis-point worse in comp. That gives you a real good idea of how impactful those SNAP benefits reductions have been."

9. On this news, Dollar General stock price declined $3.84, or nearly 5%, from a close of $77.32 per share on November 30, 2016, to close at $73.48 per share on December 1, 2016.

## JURISDICTION AND VENUE

10. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder, including SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

12. Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. §§ 78aa, and 28 U.S.C. § 1391(b) because the Company has its headquarters in this District, it conducts a substantial amount of business throughout this District, and a substantial part of the events giving rise to these claims took place in this District.

13. In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets. Dollar General common stock trades in an efficient market on the New York Stock Exchange ("NYSE") under the ticker symbol "DG."

## PARTIES

14. Plaintiff, Iron Workers Local Union No. 405 Annuity Fund, as set forth in the accompanying certification attached as Exhibit A, incorporated by reference herein, purchased Dollar General common stock at artificially inflated prices during the Class Period and has been damaged thereby.

15. Defendant Dollar General is a Tennessee corporation headquartered in Goodlettsville, Tennessee, and is a discount retailer with over 12,000 stores nationwide.

16. Defendant Todd Vasos ("Vasos") is and throughout the Class Period was the Company's CEO.

17. Vasos, because of his position in the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Vasos was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance, and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of his position and access to material non-public information available to him, Vasos knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and misleading. Vasos is liable for the false statements pleaded herein because he made, or caused to be made, all the false statements pleaded herein.

# SUBSTANTIVE ALLEGATIONS

## Materially False and Misleading
## Statements Issued During the Class Period

18. The Class Period begins on March 10, 2016, when Dollar General released its fourth quarter 2015 ("4Q2015") and annual 2015 financial results. In a press release, the Company reported same-store sales growth for the year of 2.8%, and projected EPS growth of 10% to 15% for fiscal 2016, and annual same-store sales improvement of 2% to 4%.

19. During a conference call with investors on this date, Vasos, Dollar General's CEO, was asked about announced reductions in SNAP benefits and whether these benefit reductions would have an impact on the Company's bottom line. At that time, Vasos downplayed the significance of SNAP payments to the Company and any impact the SNAP reductions would have on the Company's sales:

> [Meredith Adler (Barclay's analyst):] I think the FDA is talking about making some changes to qualifying for SNAP. And I'm wondering if you guys are looking at that and kind of what you think that means for your business.
>
> [Vasos:] Yeah, Meredith, yeah, we are watching that and we – as you know and you mentioned earlier, SNAP for us is approximately 5% of our sales. So it really has – it's not a huge piece of the business.

20. The statements referenced in ¶¶18-19 were materially false and/or misleading because those statements misrepresented and failed to disclose material adverse facts pertaining to the Company's business and operations, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: because 56 percent of Dollar General stores are located in states that re-implemented the time limitation on SNAP benefits, the announced benefit reductions would have a disproportionate impact on the Company's sales relative to the overall percentage of sales comprised of SNAP payments. As a result, Defendants' statements about the Company's

business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

21. On March 22, 2016, Dollar General filed its 2015 Annual Report with the SEC, which reiterated the annual financial results released on March 10, 2016.

22. The statements referenced in ¶ 21 were materially false and/or misleading because those statements misrepresented and failed to disclose material adverse facts pertaining to the Company's business and operations, which were known to Defendants or recklessly disregarded by them.

23. On May 26, 2016, the Dollar General announced its first quarter 2016 ("1Q2016") financial results, which included same-store sales growth of 2% for the quarter. In the press release announcing the quarterly results, the Company did not mention the reductions in SNAP benefits that already had taken effect and were having a material impact on the Company's sales and overall financial performance.

24. During a conference call discussing the Company's 1Q2016 earning on this date, Vasos did not provide investors any update on the reduction in SNAP benefits or the impact it was having on the Company.

25. The statements referenced in ¶¶ 23-24 were materially false and/or misleading because those statements misrepresented and failed to disclose material adverse facts pertaining to the Company's business and operations, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants failed to disclose that: because 56 percent of Dollar General stores are located in states that re-implemented the time limitation on SNAP benefits, the announced benefit reductions would have a disproportionate impact on the Company's sales relative to the overall percentage of sales comprised of SNAP payments. As a

result, Defendants' statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### The Truth Begins to Emerge

26. On August 25, 2016, Dollar General announced its second quarter 2016 ("2Q2016") results, which fell short of market expectations. The Company reported same-store sales growth of only 0.7% for the quarter, and attributed the disappointing results in part to "a reduction in both SNAP participation rates and benefit levels."

27. The market reacted harshly to this news, and Dollar General's stock price plummeted $16.18 per share, or more than 17%, from a close of $91.79 per share on August 24, 2016, to close at $75.61 on August 25, 2016.

28. During a conference call that day, Vasos backtracked from his prior statements on March 10, 2016 downplaying the significance of SNAP payments and said that "the headwind of SNAP for us really was a big deal" and that it was taking a "noticeable toll" on the Company's core consumers' spending. Vasos also stated that when the SNAP reductions began to take effect in April, "you could see it immediately in the numbers." Vasos warned investors that the "60 basis points to 70 basis points is a headwind that is not going to go away." However, Vasos stated that the Company was going to "take aggressive price action to get that consumer back in the store."

29. The statements referenced in ¶ 28 were materially false and/or misleading because those statements misrepresented and failed to disclose material adverse facts pertaining to the Company's business and operations, which were known to Defendants or recklessly disregarded by them. Specifically, although Defendants were now forced to admit that reductions in SNAP benefits were having a significant impact on Dollar General's bottom line, Defendants failed to

disclose that: because 56 percent of Dollar General stores are located in states that re-implemented time limitation on SNAP benefits, the announced benefit reductions would have a disproportionate impact on the Company's sales relative to the overall percentage of sales comprised of SNAP payments. As a result, Defendants' statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

30. In an analyst report published on August 26, 2016, UBS noted that because SNAP benefits accounted for only 5% of Dollar General's sales, consensus estimates were still predicting 10% EPS growth for the year, confirming that Vasos' comments failed to fully correct his March misstatements, and that the market was relying on his statements downplaying the impact of SNAP reductions in light of the fact that SNAP payments represented only 5% of Dollar General's total sales.

## The Truth is Revealed

31. On December 1, 2016, the Company announced its third quarter 2016 ("3Q2016") results, which saw a same-store sales *decrease* of 0.1%. This was a shocking announcement, since up to this point Dollar General had reported 26 consecutive years of same-store sales increases. Once again, the Company attributed its poor performance to reductions in SNAP benefits, and specifically to "an acceleration in headwinds from . . . reductions in SNAP benefits in the 2016 third quarter as compared to the 2016 second quarter." The Company also modified its annual earnings guidance, stating that earnings per share would be at the low end of its previous guidance range of 10% to 15% growth.

32. On this news, Dollar General stock price declined $3.84, or nearly 5%, from a close of $77.32 per share on November 30, 2016, to close at $73.48 per share on December 1, 2016.

33. During a conference call with investors that day, Vasos finally disclosed the true impact that SNAP benefit reductions were having on the Company:

> [I]f you look at [the SNAP headwind], it affects about 56% of our store base in the states that have reduced or eliminated the SNAP benefits. And those states that have had the reduction or elimination, they are approximately 100-basis-point worse in comp. That gives you a real good idea of how impactful those SNAP benefits reductions have been.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased Dollar General securities during the Class Period on a domestic exchange (the "Class"). Excluded from the Class are Defendants, directors and officers of Dollar General, and their families and affiliates.

35. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. The Company's shares are owned by thousands of persons.

36. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a) Whether Defendants violated the Exchange Act;

(b) Whether Defendants omitted and/or misrepresented material facts;

(c) Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

(e) Whether the price of Dollar General securities were artificially inflated; and

(f) The extent of damages sustained by Class members and the appropriate measure of damages.

37. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

38. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

39. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## LOSS CAUSATION/ECONOMIC LOSS

40. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class. The price of Dollar General securities was artificially inflated throughout the Class Period by Defendants' false and misleading statements, and significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed in corrective disclosures on August 25 and December 1, 2016, causing investors' losses. As a result of their purchases of Dollar General securities during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## SCIENTER ALLEGATIONS

41. During the Class Period, Defendants had both the motive and opportunity to commit fraud. They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time. In so doing, Defendants participated in a scheme to defraud and committed acts that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET DOCTRINE

42. Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

   (a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

   (b) The omissions and misrepresentations were material;

   (c) The Company's securities traded domestically on the NYSE, an efficient market;

   (d) The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

   (e) Plaintiff and other members of the Class purchased Dollar General securities between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

43. At all relevant times, the market for Dollar General securities was efficient for the following reasons, among others: (1) as a regulated issuer, Dollar General filed periodic public reports with the SEC; (2) Dollar General regularly communicated with public investors through

established market communication mechanisms, including through regular disseminations of press releases on major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services; and (3) Dollar General's securities traded domestically on the NYSE, an efficient market.

## NO SAFE HARBOR

44. Defendants' "Safe Harbor" warnings accompanying any forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

45. Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each forward-looking statement was made, the speaker knew the forward-looking statement was false or misleading and the forward-looking statement was authorized and/or approved by an executive officer of Dollar General who knew that the statement was false. None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## FIRST CLAIM
### Violation of Section 10(b) of the Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

46. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47. During the Class Period, Dollar General and Vasos carried out a plan, scheme, and course of conduct, which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Dollar General securities at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, each of these Defendants took the actions set forth herein.

48. Dollar General and Vasos: (1) employed devices, schemes, and artifices to defraud; (2) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (3) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Dollar General securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. Defendants are sued as primary participants in the wrongful and illegal conduct charged herein and/or as controlling persons.

49. Defendants' Class Period statements were issued with actual knowledge of their falsity or were issued with extreme recklessness.

50. As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

### SECOND CLAIM
### Violation of Section 20(a) of the Exchange Act
### Against Defendant Vasos

51. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

52. Defendant Vasos acted as a controlling person of Dollar General within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of his high-level position, and his ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements issued by the Company and disseminated to the investing public, Vasos had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Vasos was provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, Vasos had direct and supervisory involvement in the day-to-day operations of the Company and therefore is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

54. As set forth above, Dollar General and Vasos each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of his position as a controlling person, Vasos is also liable pursuant to Section 20(a) of the Exchange Act.

55. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding damages and equitable relief in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

56. Plaintiff hereby demands a trial by jury.

Dated: January 18, 2017

Respectfully submitted,

s/Ronald J. Berke
**BERKE, BERKE & BERKE**
Ronald J. Berke (BPR #1741)
A. Emma Flynn (BPR #32582)
Charles A. Flynn (BPR#30878)
420 Frazier Avenue
P. O. Box 4747
Chattanooga, TN 37405
Telephone: (423) 266-5171
Facsimile: (423) 265-5307
ronnie@berkeattys.com
emma@berkeattys.com
chuck@berkeattys.com

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Darren J. Check
Naumon A. Amjed
Jonathan R. Davidson
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
dcheck@ktmc.com
namjed@ktmc.com
jrdavidson@ktmc.com

*Attorneys for Plaintiff*

17
Case 3:17-cv-00063   Document 1   Filed 01/18/17   Page 17 of 17 PageID #: 17